UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEAN R., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations, <br><br> Defendant. | CASE NO. C18-0936-RAJ-MAT <br><br> REPORT AND RECOMMENDATION RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends this matter be REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1964.[1] She completed high school and a cosmetology degree. (AR 36, 271.) The record reflects plaintiff's self-employment in linen manufacturing

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

REPORT AND RECOMMENDATION
PAGE - 1

from 1996 through May 2001, as well as her report of having worked for five years during the early 2000s, earning between $30,000 to $100,000 per year operating a business designing and manufacturing tablecloths for restaurants. (*See* AR 14, 258, 395.) However, because the exact amount of earnings from the later time period could not be confirmed and the record showed no reported earnings from 2001 and beyond, plaintiff has no qualifying past relevant work. (AR 13-14, 36-38, 254.)

Plaintiff filed DIB and SSI applications in February 2014, alleging disability beginning May 1, 2001. (AR 233, 235.) Her applications were denied initially and on reconsideration.

As described further below, ALJ M.J. Adams attempted to hold hearings on plaintiff's applications on March 29, 2016 and July 5, 2016, but postponed the proceedings to allow plaintiff to obtain counsel and provided her opportunities to confirm whether the record was complete. (AR 69-83.) An October 5, 2016 attempt to hold a hearing ended almost immediately after it started. (AR 66-68.) Plaintiff again appeared without counsel on February 17, 2017 and the ALJ conducted the hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 30-64.) On March 27, 2017, the ALJ issued a decision finding plaintiff not disabled. (AR 11-24.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on April 26, 2018 (AR 1), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must

be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe plaintiff's degenerative disc disease of the cervical spine, history of a lumbar strain, temporomandibular joint disorder (TMJ), attention deficit hyperactivity disorder (ADHD), borderline intellectual functioning, personality disorder, and somatic symptom and related disorders. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform light work, with the following limitations: lift/carry twenty pounds occasionally and ten pounds frequently; stand and/or walk (with normal breaks) and sit for six hours in an eight-hour workday; push/pull unlimitedly within those exertional limitations; unlimitedly climb ramps and stairs and balance; occasionally climb ladders, ropes, and scaffolds; frequently stoop, kneel, and crouch; occasionally crawl; occasionally reach overhead bilaterally due to cervical spine arthropathy; perform simple, routine tasks and follow short, simple instructions; do work that needs little or no judgment and perform simple duties that can be learned on the job in a short period of less than thirty days; respond appropriately to supervision, but should not be required to work in close coordination with coworkers where teamwork is required; can deal with occasional changes in the work environment; and some difficulty working directly with the public, but could work in jobs that require only occasional exposure to or interaction with the general public. Plaintiff had no past relevant work to consider at step four.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a photocopy machine operator, housekeeper, and small products assembler.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ failed to fully develop the record and seeks reversal for further administrative review or, alternatively, remand for consideration of new and material evidence. Plaintiff also avers error in the ALJ's consideration of a medical opinion and in the failure to consider the observations of agency personnel. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## Development of the Record

An ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). That

duty exists even when a claimant is represented by counsel, *id*., and, with an unrepresented claimant, requires the ALJ "be especially diligent in exploring for all the relevant facts." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The duty "is also heightened where the claimant may be mentally ill and thus unable to protect her own interests." *Id*.

Plaintiff asserts the ALJ failed to make any effort whatsoever to update the medical record after denying her claim at the reconsideration stage in mid-November 2014. For example, while plaintiff identified continuing treatment at Orcas Family Health Center and ongoing involvement with the Division of Vocational Rehabilitation Services (DVR) in a January 2015 disability report (AR 292, 294), the ALJ never requested updated records from those sources. Plaintiff denies the existence of any documentation showing attempts to obtain additional records and notes the ALJ issued the March 27, 2017 decision without any medical evidence dated in the preceding twenty-nine months, with the most recent medical record dated June 9, 2014 (*see* AR 430).

Plaintiff also provides medical records dated within the relevant period and obtained by her counsel, but not included in the administrative record. The records include: (1) a Department of Social and Health Services (DSHS) psychological evaluation from examining psychologist Dr. Lee Gustafson dated October 27, 2014 (Dkt. 16-1); (2) a DSHS review of medical evidence from reviewing doctor Holly Petaja, Ph.D. (Dkt. 16-2); and (3) treatment notes from Orcas Family Health Center dated April 11, 2014 and October 9, 2014 (Dkt. 16-3). She maintains these missing medical records are material to the disability determination. She points, for example, to the marked and severe limitations assessed by Drs. Gustafson and Petaja and not accounted for in the RFC or VE hypothetical responses relied upon by the ALJ at step five, as well as the diagnoses of a mood disorder, contrary to the ALJ's finding plaintiff had no medically determinable impairment of depression. (*See* Dkts. 16-1 & 16-2; *see also* Dkt. 16-3 at 4 (October 2014 treatment note

REPORT AND RECOMMENDATION
PAGE - 5

describing plaintiff as inattentive, losing her train of thought, anxious, and perseverating).) Plaintiff also states she appeared to make specific reference to the missing report from Dr. Gustafson during the 2017 hearing and was mistakenly told by the ALJ that report was already included in the record. (*See* AR 43-44 ("[CLMT]  Now there was another [DSHS] report, his name was Vestasin [phonetic] in Everett. . . .  And he's, and no one's ever been able to reach him ever since he did the report.  Do you have that one?  [ALJ]  I believe we do.")) Plaintiff argues further administrative review is necessary. *See Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 932 n.10 (9th Cir. 2014) ("We have consistently treated an ALJ's failure to adequately develop the record as reversible legal error."); *Ghanim v. Colvin*, 763 F.3d 1164, 1166 (9th Cir. 2014) (ALJ's RFC determination and reliance on VE's testimony flawed where ALJ improperly discounted medical evidence and testimony); *McLeod v. Astrue*, 640 F.3d 881, 887-88 (9th Cir. 2010) ("[W]here the circumstances of the case show a substantial likelihood of prejudice, remand is appropriate so that the agency 'can decide whether re-consideration is necessary.' By contrast, where harmlessness is clear and not a 'borderline question,' remand for reconsideration is not appropriate.") (quoted source omitted)).

Plaintiff alternatively requests remand for consideration pursuant to "sentence six" of 42 U.S.C. § 405(g), which provides for remand with a showing of "new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Accord Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). Plaintiff asserts that, in addition to the materiality of the new evidence as described above, her mental illness and lack of representation at the administrative level provides good cause for the failure to submit the evidence sooner. She also provides a DSHS review of medical evidence from reviewing doctor Brent Packer, M.D., dated May 12, 2017, after the ALJ's decision, and finding her limited to

sedentary work, with marked postural, motor skill, and mental limitations and the identification of a December 23, 2013 onset date. (Dkt. 16-4.) Plaintiff states that, in addition to her mental illness and lack of representation, good cause to not provide this evidence earlier is shown by the fact Dr. Packer conducted a review and not an examination, and she was not aware of this evidence until her counsel requested DSHS records on appeal to this Court.

A disability benefits claimant bears the ultimate responsibility to prove disability. 20 C.F.R. §§ 404.1512(a), 416.912(a). The claimant must inform the Social Security Administration (SSA) about or submit all known evidence related to disability. *Id.* This duty is ongoing, requires disclosure about any additional related evidence about which the claimant becomes aware, and applies at each level of administrative review, including the Appeals Council level if the evidence relates to the period on or before the ALJ's decision. *Id.* If asked, the claimant must inform the SSA about his or her medical sources and other relevant factors. *Id.*

The SSA also bears a responsibility to develop the record. Before making a disability determination, the SSA must develop a claimant's medical history for at least the twelve months preceding the date of the application for benefits. §§ 404.1512(b)(1), 416.912(b)(1). The agency must "make every reasonable effort" to help a claimant get medical evidence, which entails making an initial request for evidence and, if not received, "one follow-up request to obtain the medical evidence necessary to make a determination." §§ 404.1512(b)(1)(i), 416.912(b)(1)(i). An ALJ may, but is not required to obtain a consultative examination, §§ 404.1512(b)(2), 416.912(b)(2), or issue subpoenas for evidence, § 404.950(d)(1). *See also* § 404.950(d)(2) (a claimant may also request issuance of a subpoena).

"Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'"

REPORT AND RECOMMENDATION
PAGE - 7

*Tonapetyan*, 242 F.3d at 1150 (quoted sources omitted). *Accord Mayes*, 276 F.3d at 459-60 ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.") This duty may be discharged in several ways, such as by subpoenaing or submitting questions to physicians, continuing the hearing, or keeping the record open after the hearing to allow for its supplementation. *Tonapetyan*, 242 F.3d 1150.

The record in this case shows plaintiff provided the SSA with information regarding her medical providers in disability reports completed in 2014 and January 2015. (AR 269-78, 279-85, 290-95.) In letters dated July 10, 2015, the SSA asked plaintiff to complete questionnaires regarding recent medical treatment, medications, and work history, provided a CD containing the evidence in the record, noted her responsibility to provide medical evidence supporting her claim, including all medical records from one year prior to the alleged onset date and any other records not already contained in the file, and asked her to return a signed authorization to release information. (AR 296-306; *see also* AR 307-08 (providing directions on how to open CD).)

At the initial hearing date in March 2016, the ALJ delayed the hearing to allow plaintiff time to obtain counsel, provided another copy of the record on CD, and arranged for a hearing office employee to help plaintiff open and review the record. (AR 79-82.) The ALJ attempted to hold a hearing in July 2016, but again postponed to provide plaintiff additional time to obtain counsel, gave plaintiff an additional CD, and arranged for someone to assist her in opening and reviewing its content. (AR 71-74.) A third hearing on October 5, 2016 ended almost immediately, after plaintiff failed to return after re-parking her car. (AR 11, 66-68.) In a letter that same day, plaintiff indicated she would be getting a new CD and had been asked to meet with a hearing office employee to review the record. (AR 318.) By letter dated October 6, 2016, the agency again asked

plaintiff to complete questionnaires and provide any additional evidence she wanted considered. (AR 321-27 ("If there is more evidence you want considered in your case, please submit it promptly."))[2]

The ALJ ultimately conducted the hearing in February 2017 and admitted the medical records received into evidence. (AR 34-35.) Plaintiff at one point suggested something might be missing from the record, but did not provide further information. (AR 34.) She brought records with her to the hearing, but the ALJ told her to retain them because they were duplicates of existing exhibits. (AR 43-45, 58.) As observed by plaintiff, she suggested the existence of another DSHS evaluation, but was told it was contained in the record. (AR 43-44.) The ALJ informed plaintiff he would keep the record open so that she could submit any additional evidence. (AR 59-62.)

The Commissioner denies the alleged inadequacy of the ALJ's efforts to develop the record and notes that that duty is not infinite. The Commissioner also rejects the request for remand based on the new evidence submitted. She contends some of the evidence does not bear directly and substantially on this matter, such as lab reports and treatment notes from a gynecological check-up and office visit for back, hip, and jaw pain. (*See* Dkt. 16-3 and Dkt. 16-4.) She maintains other evidence does not create a reasonable probability of changing the outcome given the similarity to records already rejected, comparing, for example, the March 2017 physical assessment (Dkt. 16-

---

[2] Plaintiff states there is no evidence as to whether or not she completed and returned the questionnaires and that the letters do not "expressly ask" that she return the forms to the SSA or indicate how or where to return them. (Dkt. 18 at 2, n.1.) She suggests she may have completed the forms and brought them to a hearing. These assertions are not reasonable. The letters accompanying the questionnaires ask that they be completed, that any additional evidence be submitted, and that any questions be directed to the telephone or address provided. (AR 296, 303-04, 321.) The hearing transcripts show the ALJ repeatedly sought to assist plaintiff's review of the existing record, considered documentation plaintiff presented, and directed her to provide any additional evidence she wanted considered (*see, e.g.*, AR 34-35, 42-45, 52, 58-62). The file also contains a letter from plaintiff dated in October 2016 and reflecting at least some ability to provide the agency with relevant information. (AR 318.)

REPORT AND RECOMMENDATION
PAGE - 9

4) with a 2014 assessment (AR 444-51), and noting the ALJ's rejection of a limitation to sedentary work (AR 21 (finding inconsistency with overall objective findings, minimal, sporadic, and conservative treatment, and noting the absence of radiographic workup of lumbar spine, benign cervical spine findings, and essentially negative mandible findings)).

The Commissioner also avers the similarity of the October and November 2014 opinions of Drs. Gustafson and Petaja (Dkts. 16-1 and 16-4) with the February 2014 opinion of examining psychologist Dr. Kerry Bartlett (AR 392-99). She notes, for example, both Dr. Gustafson and Dr. Bartlett described plaintiff's difficulties in answering questions, maintaining train of thought, and scattered speech, and the similar diagnoses offered by Drs. Bartlett, Gustafson, and Petaja. (*See* Dkt. 17 at 8.) The Commissioner denies the new evidence creates a reasonable possibility of changing the outcome in that the reasons for discounting Dr. Bartlett's opinion apply equally well to the new evidence. (*See* AR 22-23 (contrasting diagnoses of ADHD and borderline intellectual functioning with ability to graduate high school with a B average, complete a one-year cosmetology program, and run her own business; noting, while Dr. Bartlett speculated plaintiff was only able to run her own business with substantial help from others, he was unaware she was later engaged in a similar business while in cosmetology school, when she was working with a partner and her personal responsibilities included pricing items, buying fabric, helping with design, and doing the accounting (*see* AR 336); contrasting somatoform diagnosis with the absence of any documented pain behaviors during evaluation or appointments and noting she had not taken any regular pain medications since onset; contrasting personality disorder diagnosis with ability to work as a waitress for several years, interact with customers when running her business, get along with family, friends, and neighbors, interact appropriately with providers, enjoy talking to friends on the telephone, and frequent visits to the Chamber of Commerce to network; and finding

opinions to rely in part on plaintiff's self-report, which was questionable given discrepancies identified, including the lack of any posted earnings in the 2000s).) The Commissioner observes that Dr. Gustafson only evaluated plaintiff once, while Dr. Petaja only conducted a review, that both completed checkbox forms without narrative explanations, and that Dr. Petaja reviewed a limited number of records.

Plaintiff inaccurately contends the ALJ made no effort whatsoever to update the record beyond mid-November 2014. As reflected above, the ALJ repeatedly sought to assist plaintiff in reviewing the existing record in order to determine whether or not it was complete, requested updated information that would have allowed for additional record requests, asked plaintiff to submit any additional medical and other evidence, provided extensions to allow for her to obtain counsel, and continued to keep the record open years after the reconsideration denial in November 2014. Barring unusual circumstances, these efforts would be fairly described as reasonable and adequate to meet an ALJ's duty to ensure a claimant's interests are considered.

This case, however, presented unusual circumstances. Plaintiff has mental impairments and remained unrepresented despite several extensions of time to allow her to retain counsel. A review of the hearing transcripts provides additional cause for concern as to plaintiff's ability to assist in developing the record. It appears, for example, plaintiff had still not reviewed the record by the time of the final hearing (*see* AR 34) despite several attempts to have her do so in the hearing office, assisted by a hearing office employee.

Further, plaintiff's presentation at the 2017 hearing appeared similar to her 2014 presentation to Dr. Bartlett, who noted, *inter alia*, "circumstantial verbosity with associated tangentiality and intermittent derailment[,]" word mispronunciation, and limited vocabulary and verbal reasoning skills, and who raised questions about plaintiff's cognitive abilities and

REPORT AND RECOMMENDATION
PAGE - 11

limitations.  (AR 392, 396-97.)  Plaintiff appeared confused about the nature of the hearing and the questions asked.  (*See*, *e.g.*, AR 33 ("[ALJ] So what's your question? [CLMT] Well obviously you know what happened with Dominick.  I also have a police report in Belleview [sic] because I was part of a smash and grab and they did take some of my paperwork."); AR 37 ("[ALJ] How much did you get from them?  [CLMT] I don't remember exactly but my old lawyer is a Judge in Kent so I was thinking about it and needed to call some people, I mean for, you know, for witnesses.  I mean I've been through DVR three times, you know, the police officer obviously, detective now on 4th here, obviously knows I was in an extreme amount of pain, I feel like they dropped this building into my head and granted – [ALJ] Okay.  I'm not sure how that's relevant to what my question was."); AR 42-43 ("[ALJ] And what documents did you bring with you today that you want us to consider?  [CLMT] Well some of it got taken in the smash and grab and I have the police reports and I'm supposed to view on the Internet there was quite extensive, I don't know if you saw it on the news.  But, you know, so they have been to the house in Belleview three times and there's been police officers out there.  And the house didn't actually get broken into but my car did.  [ALJ] Okay, now that's all collateral. . . . – are there any medical records you want us to consider. . . . [CLMT] One from this gentlemen and I did try to call the other gentleman back and what I'm thinking is from everything I've heard and then I also was injured again in 2001 where, see, I get this paralyzation [phonetic] like where my leg will give out, that's why I pull over on the side of the road.  It like goes numb and so I had actually fallen –  [ALJ] Try focusing on that paperwork, ma'am.  [CLMT] The top of the stairs and I hit my head again.  [ALJ] Let's look at the paperwork.  [CLMT] And I landed in the flower pots."))  After multiple attempts by the ALJ to obtain information regarding medical records, plaintiff talked about the possibility of brain damage, continued to give meandering and confusing responses to inquiries, and suggested she

needed further testing. (*See, e.g.*, AR 44-45 ("[CLMT] . . . Well on one of those pages it says that I may have got brain damage. Then I had a doctor up at Orcas Island but you do realize that that's why the university is going up there is because they have very minimal, if any, medical help. . . . I think it, what they've said is that I don't know what this means, it says that I'm marked. And I asked them does this mean I'm marked to fall apart and – [ALJ] Let me ask you to do this. [CLMT] – they said I don't understand what marked is. [ALJ] Those papers that you have there loose. [CLMT] Yes. [ALJ] You can keep all of those because we have, we have – [CLMT] You have these, okay. Now when I fell all the way down like 15 stairs and in my head when my leg gave out. My head hit the side of the railing and hit a wall and left my teeth marks in there and my lipstick on there for months. . . . And that's the second time, then I had to have plastic surgery, they did a good job, and that also says that was Evergreen Hospital, it also says that I could have had brain damage. [ALJ] Okay. . . Unfortunately there's no documentation of brain damage and that's good. [CLMT] Well I think that maybe I should go in there and have it checked. So I called to get some referrals . . . "); *see also* AR 55-56 ("[CLMT] I guess my question [to the VE] is, and then she, she had told me but I forgot because I just read a couple years ago that I had brain damage possibly from this bus and that, and that she had told me that if I ever became where I couldn't work I was supposed to collect Social Security and I hit my head so hard I forgot. So I've been hop, skipping and jumping through my life – [ALJ] Okay, that's not really a relevant question. . . . [CLMT] – my point I guess, being is, just a moment, I think like there was something, I'm sorry.")) Plaintiff also misunderstood the purpose of the VE's testimony, asking about suggestions for getting her a job and vocational rehabilitation, and, as she had earlier in the hearing, veered off into unrelated matters and made unusual statements. (*See* AR 49-61 ("[CLMT] Yes, yes, it was nice to see you too and hopefully if something happens – [ALJ] All right, well

REPORT AND RECOMMENDATION
PAGE - 13

good luck to you. [CLMT] Waiting for the trees to hit me."))

The ALJ's decision addresses evidence associated with plaintiff's cognitive abilities and limitations, including the evaluation of Dr. Bartlett. It does not, however, address or even acknowledge plaintiff's presentation at the hearing. The ALJ, instead, merely contrasted hyperactive behavior noted by Dr. Bartlett with office visits in March and April 2014 in which plaintiff sought treatment following a fall and in relation to a sore throat, and wherein she "was described as comfortable and in no acute distress." (AR 19 (citing AR 401, 404) and AR 20 (citing AR 420).) (*See also* AR 20 (noting typical descriptions of plaintiff as cooperative, pleasant, and appearing in no acute distress and citing records dated in 1992, 1993, 1994, and 2011) (citing AR 350, 358, 368, 372, 389).) Moreover, in discounting the evidence associated with cognitive issues and Dr. Bartlett's related opinions, the ALJ relies in large part on evidence dated long before the time period at issue in this case, such as plaintiff's ability to graduate high school with a B average, attend cosmetology school from 1993 to 1994, work as a waitress, and operate a small business with a friend while in cosmetology school. (AR 15-16, 19, 22.) There is no indication the ALJ considered plaintiff's presentation at hearing or the possible need for a consultative examination and/or further testing.

Nor did the ALJ acknowledge evidence in the record directly addressing the question of whether plaintiff could adequately assist in the development of the record. Specifically, noting his understanding plaintiff had initiated an application for disability benefits, Dr. Bartlett opined plaintiff "will clearly require ongoing support throughout that process." (AR 398.) He stated plaintiff's "presentation suggested that she would benefit from ongoing case management support due to the significance of her cognitive disorganization[,]" that psychiatric consultation would be helpful, and suspected she would have difficulty administering any medication consistently

without some assistance. (*Id.*)

Both new medical records provided by plaintiff and observations of agency personnel not addressed by the ALJ add to the above-described evidence of an insufficiently developed record. (AR 34.) Dr. Gustafson, for example, found plaintiff distractible, with difficulty maintaining a train of thought, skipping from topic to topic, answers often unrelated to the questions asked, scattered speech, and concrete abstract thought. (Dkt. 16-1 at 2, 4.) In February 2014, an SSA employee noted it took over ninety minutes to assist plaintiff in completing a form, her apparent extreme difficulty maintaining focus, rarely satisfactory responses to questions, and frequent need for questions repeated two-to-three times, following lengthy replies and drawn out explanations not related to the information requested. (AR 258 ("For example: When asking a closed ended question such as if the client had ever lived outside of the United States the client responded with a 5 minute story about not getting her nails done anymore with friends from Bellevue. Client's responses were disassociated with the questions asked about 75% of the time[.] . . . [I]n some cases it took over 10 minutes to get the client to answer a single question satisfactorily.")) An SSA employee who assisted plaintiff in completing a disability report in August 2014 described her as rambling, rifling through paperwork, and difficult to keep coherent and on track. (AR 280, 284.)

An ALJ "is not a mere umpire" in disability proceedings and has "an independent duty to fully develop the record, especially where the claimant is not represented." *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992). Indeed, "'where the claimant is not represented, it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts[,]'" and to "'be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.'" *Id.* (quoting *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978)). When the ALJ fails to meet this burden and the claimant is prejudiced, a remand is

REPORT AND RECOMMENDATION
PAGE - 15

appropriate. *Id.*

The Court here concludes the ALJ failed in his duty to fully and fairly develop the record. Plaintiff's failure to secure counsel or submit basic paperwork allowing for further development of the record and her presentation during interactions with agency personnel, psychological examinations, and the hearing should have triggered the ALJ's duty to develop the record further, whether through a consultative examination or some other means. There is also a question as to whether the ALJ requested the records identified in plaintiff's January 2015 disability report and all relevant DSHS records, including the evaluation from Dr. Gustafson.

This matter is properly remanded for further development and consideration of the record. On remand, the ALJ should reconsider all of the evidence contained in the current record, obtain a comprehensive consultative examination to address any cognitive or related issues, incorporate the new evidence identified by plaintiff into the record, take all reasonable steps to further develop the record with pertinent information regarding plaintiff's medical treatment, medications, and work history, and conduct a hearing in which plaintiff has the assistance of counsel.

## CONCLUSION

For the reasons set forth above, this matter should be REMANDED for further administrative proceedings.

## DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within

**fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **June 28, 2019**.

DATED this 11th day of June, 2019.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 17